**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **MICHAEL A. MCGUIRE** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| **JADARIUS CHARLES RICHARDSON**, in his individual capacity; **HEATHER WILLIAMS**, in her individual capacity; **CITY MONTGOMERY, ALABAMA POLICE DEPARTMENT**; and **CITY OF MONTGOMERY, ALABAMA**, a municipal corporation, | ) ) ) ) ) **Jury Trial for Damages Demanded** ) ) ) |
| | ) |
| *Defendants*. | ) |

## COMPLAINT

On May 23, 2024, for the first time since moving back to his hometown of Montgomery, Alabama, in 2010, Plaintiff Michael A. McGuire could live with his wife in their Montgomery residence. *See McGuire v. Marshall*, 741 F. Supp. 3d 1112, 1202 (M.D. Ala. 2024) (finding portions of the Alabama Sex Offender and Community Notification Act's ("ASORCNA") residence prohibitions unconstitutional as applied to Mr. McGuire and others). Before May 2024, Mr. McGuire lived under a bridge and not with his wife because he is a registrant of ASORCNA, and ASORCNA prohibited him from living where his wife did. *See* Ala. Code § 15-20A-11 (prohibiting ASORCNA registrants from residing within 2,000 feet of a school, daycare, or other facilities where children may be present).

Since 2010, when Mr. McGuire returned to Montgomery, members of the City of Montgomery, Alabama Police Department ("MPD") unjustifiably required him to vacate his mother's home, interrogated him when he was homeless, and harassed him at his home when he was fortunate enough to find housing. MPD Officers have treated Mr. McGuire in this fashion because, as they have explicitly stated, his label as a "sex offender" means he is not a "normal" or "regular" citizen. Mr. McGuire has not committed any crimes since 1985, has never once harmed a minor or a child, and has not been on probation or parole for over three decades.

On July 25, 2023, MPD officers continued their harassment of Mr. McGuire, even after having been notified years earlier that their behavior violated the United States Constitution. MPD officers showed up at Mr. McGuire's home unannounced and uninvited. They banged on his door and yelled expletives, demanding that he open the door. They justified these heavy-handed actions as an attempt to confirm that Mr. McGuire in fact lived at his home—something he had sworn under penalty of felony conviction to be true just the day before.

This case is about a free American citizen fighting back in the only way he can against the tyrannical behavior of members of the MPD and its enablers. Those officials have once again disregarded Mr. McGuire's right to simply be left alone—to live his life in peace with his family in the safety and security of his own home.

## JURISDICTION AND VENUE

1.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Mr. McGuire seeks redress for the deprivation of rights secured by the United States

Constitution. Mr. McGuire's federal claims are brought under 42 U.S.C. § 1983.

2. The Court has supplemental jurisdiction of any state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in the Middle District of Alabama under 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiff Michael A. McGuire is a resident of Alabama who is over the age of 19.

5. Defendant Jadarius Charles ("J.C.") Richardson was at all times relevant an officer with the City of Montgomery, Alabama Police Department, a resident of the Middle District of Alabama, and over the age of 19. He is sued in his individual capacity.

6. Defendant Heather Williams was at all times relevant an officer with the City of Montgomery, Alabama Police Department, a resident of the Middle District of Alabama, and over the age of 19. She is sued in her individual capacity.

7. The City of Montgomery, Alabama Police Department ("MPD") is a local government department, which serves the city of Montgomery, Alabama, providing law enforcement and public safety services to its residents.

8. The City of Montgomery, Alabama is a municipal corporation.

## FACTUAL ALLEGATIONS

### "Home-Compliance Check" History Between Mr. McGuire and MPD

9. In April 2016, Mr. McGuire was deemed under ASORCNA to be homeless, although he intermittently obtained ASORCNA-compliant homes between periods of homelessness. *McGuire v. Strange*, Case No. 2:11-cv-1027 (M.D. Ala.), ECF No. 360 at 2.

3

10. On or about September 2017, Mr. McGuire was living in an ASORCNA-compliant home. During that time, MPD conducted a series of "home-compliance checks" of Mr. McGuire's residence.

11. During "home-compliance checks" as MPD officers conducted them at that time, MPD officers or investigators went to the home of an ASORCNA registrant, questioned people at the residence, and demanded proof that the registrant lives in the home. *See* Exhibit 1. During at least one "home-compliance checks" of Mr. McGuire's residence, an MPD officer had banged on his front door and front-facing windows, had gone into his backyard and banged on bedroom windows, and had threatened to arrest him.

12. In 2017, Mr. McGuire, through counsel, sent a cease-and-desist letter to the City Attorney, Kim Fehl, demanding that the MPD and its officers stop harassing Mr. McGuire at his residence during MPD "home-compliance checks." *See id.*

13. In his cease-and-desist letter, Mr. McGuire recounted how, during one "home-compliance check," an MPD officer had demanded that he prove his residence by showing the officer a bill addressed to him or by letting the officer inside to look for clothing belonging to him. *Id.*

14. Mr. McGuire described how these actions violated his rights protected by the United States Constitution, and he demanded that the MPD and its officers stop conducting "home-compliance checks" in an unconstitutional manner. *Id*.

15. On or about October 28, 2021, Mr. McGuire moved in with his nephew, Mr. Javarus Smith, at an address that was approved as ASORCNA-compliant by both the MPD and Montgomery Alabama County Sheriff's Office ("MCSO"). *See* Exhibit 2.

4

16. On July 24, 2023, Mr. McGuire completed his quarterly registration at both the MPD and the MCSO, registering the address he had lived in with Mr. Smith since October 28, 2021. Exhibit 3.

### Defendant Richardson's July 25, 2023 Home-Compliance Check of Mr. McGuire's Residence

17. On July 25, 2023, Defendant Richardson and other members of law enforcement went to Mr. McGuire's residence to conduct a "home-compliance check."[1]

18. Defendant Richardson was the lead law enforcement officer with MPD who conducted the home check operation on July 25, 2023.

19. Defendant Richardson conducted the July 25, 2023 operation under the supervision of Heather Williams of MPD.

20. During the July 25, 2023 home check, law enforcement officers arrived at Mr. McGuire's residence unannounced, uninvited, and without a warrant. They banged loudly on the front door.

21. Mr. McGuire was inside the residence, as was his roommate and nephew, Javarus Smith, and Smith's mother, Brenda Smith.

22. Mr. McGuire, Mr. Smith, and Brenda Smith were not expecting visitors and were frightened by the loud banging.

---

[1] From all accounts, the July 25, 2023 home-compliance check was part of a routine round of home checks and was not related to Mr. McGuire's registration the day before.

23. After law enforcement banged on the front door about three separate times, Mr. Smith went to the kitchen window, which is located a few feet to the side of the front door. As he peered through the blinds, he saw a man in a law enforcement uniform.

24. He also heard at least one male voice yell, "Open the motherfucking door, motherfucker!" He heard that demand at least three times.

25. Mr. McGuire has a mental health condition that causes him to respond to stressful situations with extreme anxiety, withdrawal, and fear.

26. Because of the banging and yelling and because Mr. McGuire had stressful interactions with the MPD before, Mr. McGuire was extremely frightened. He retreated to a room in the back of the home and sat in a closet.

27. As the law enforcement officers continued to bang on the front door and demand that the door be opened, Mr. Smith tried to call Mr. McGuire's attorney. He did not receive an answer to the phone call.

28. Mr. Smith sent a text to Mr. McGuire's attorney stating, "911 please call me asap."

29. Fearing the officers would kick in his door and harm him, his mother, and his uncle, Mr. Smith believed he had no choice but to open the front door.

30. He went to the front door and opened it just enough to get his head and part of his body out of the door.

31. Defendant Richardson began asking questions about Mr. McGuire.

32. Because the officers were so aggressive, Mr. Smith felt the need to protect himself and his family from what he believed to be imminent forced entry by the officers.

33. Out of fear, and to protect his family, Mr. Smith lied to Defendant Richardson by telling him Mr. McGuire did not live in the home.

34. As Mr. Smith was speaking to Defendant Richardson, another law enforcement officer held up a photograph of a person to Mr. Smith's face. Mr. Smith recognized the person in the photograph as his next-door neighbor.

35. Although Mr. Smith had lived in his home for nearly three years, Mr. Smith told Defendant Richardson he had lived there for two years.

36. At Defendant Richardson's demand, Mr. Smith gave Defendant Richardson his name and date of birth.

37. Defendant Richardson did not ask Mr. Smith any additional questions.

38. Immediately after the July 25, 2023 home check, Mr. McGuire was extremely upset—he was visibly shaking and he experienced a panic attack.

39. Mr. McGuire's attorney came to the residence and calmed Mr. McGuire shortly after the officers left.

**Defendant Richardson Obtained a Warrant for Mr. McGuire's Arrest**

40. On July 27, 2023, two business days after conducting the home check at Mr. McGuire's residence, Defendant Richardson obtained a warrant for Mr. McGuire's arrest.

41. In obtaining the warrant, Defendant Richardson swore that he had probable cause to believe that Mr. McGuire violated Ala. Code § 15-20A-10(c)(1).[2] Exhibit 4.

---

[2] Ala. Code § 15-20A-10(c)(1) reads:

> Immediately upon transferring or terminating any residence, employment, or school attendance, the adult sex offender shall appear in person to notify local law

7

42. Defendant Richardson stated that his probable-cause determination was based on the fact that Mr. Smith said that Mr. McGuire did not live at the residence. *Id*.

43. Relying on Defendant Richardson's sworn statements, a magistrate issued a warrant for Mr. McGuire's arrest.[3] Exhibit 5.

### The August 4, 2023 Arrest of Mr. McGuire

44. On August 4, 2023, Mr. McGuire was living with Mr. Smith in a home that is approximately 525 feet from his wife's home.

45. Mr. McGuire's wife's home is approximately 1,940 feet from a school and is therefore a prohibited residence for ASORCNA registrants. Ala Code § 15-20A-11(a).

46. On Friday, August 4, 2023, at about 10:30 a.m., Mr. McGuire walked to his wife's home to retrieve their jointly owned vehicle so that he could drive to a local convenience store about a quarter of a mile away from their homes.

47. On his way back from the convenience store, a black SUV trailed him closely. As he arrived in his wife's driveway, approximately eight (8) law enforcement officers in several unmarked vehicles blocked the driveway and the street surrounding her home.

48. The officers exited their vehicles with guns drawn, yelling demands that Mr. McGuire raise his hands and not move. Mr. McGuire was extremely frightened.

---

enforcement in each county in which the adult sex offender is transferring or terminating residence, employment, or school attendance.

ASORCNA defines "immediately" as "Within three business days." Ala. Code § 15-20A-4(9).

[3] The magistrate issued a warrant based on Mr. McGuire's purported violation of Ala. Code § 15-20A-9. That provision does not apply in any way to the incident that occurred on July 25, 2023; it simply outlines the requirements for adult sex offenders prior to release from incarceration.

8

49. Mr. McGuire was arrested and taken to the MPD Criminal Investigations Division (CID), where Defendant Richardson held him for an interview.

50. Mr. McGuire refused to speak with Defendant Richardson while at CID.

51. Defendant Richardson held Mr. McGuire at the CID for approximately two hours and then had him transported to Montgomery County, Alabama jail.

52. Mr. McGuire was released at approximately 6:00 p.m. on the evening of August 4, 2023, when his family posted his bond. Exhibit 6.

53. After his release, Mr. McGuire was required to move from his residence because a daycare had established its place of business within 2,000 feet of that home after Mr. McGuire had moved there in 2021. Exhibit 7.

### The August 25, 2023 Preliminary Hearing

54. Mr. McGuire requested and was granted a preliminary hearing regarding the executed warrant and the arrest conducted by Defendant Richardson. Exhibit 8. The State subpoenaed Defendant Richardson and Mr. Smith as witnesses for the hearing.

55. During the preliminary hearing, Defendant Richardson recounted the details of the July 25, 2023 home check at Mr. McGuire's residence. Exhibit 9, *State of Alabama v. McGuire*, Case No. 03-dc-2023-900171, Prelim. Hrg. T. 4:20–7:12.

56. He stated that MPD conducts the checks every year. *Id.*, 6:22–7:1.

57. Defendant Richardson stated that Mr. Smith told him Mr. McGuire did not live there and that Mr. Smith's statement was the basis for him obtaining the warrant for Mr. McGuire's arrest. *Id.*, 5:17–6:3.

9

58. On cross-examination, Defendant Richardson admitted that, before July 25, 2023, he had no reason to believe that Mr. McGuire did not live at his registered address, including on July 24, 2023, when Mr. McGuire had registered his address. *Id.*, 11:12–19; 14:1–9.

59. Defendant Richardson admitted that he did "not know [the provisions of ASORCNA]" under which he obtained the warrant for Mr. McGuire's arrest. *Id.*, 14:1–22.

60. Defendant Richardson stated that he was simply "on assignment" when he conducted the home-compliance check of Mr. McGuire residence on July 25, 2023. *Id.*

61. Defendant Richardson admitted that it is not a crime for people at a residence to lie to him during home-compliance checks and that it was not a crime for Mr. Smith to have lied to him. *Id.*, 13:8–22.

62. Defendant Richardson admitted that he never asked Mr. Smith if Mr. McGuire had ever lived at the residence. *Id.*, 18:16–20.

63. Defendant Richardson admitted that he did not conduct any additional investigation whatsoever to ensure the reliability of Mr. Smiths' statements on July 25, 2023. *Id.*, 12:2–13:11.

64. The State did not present Mr. Smith as a witness at the preliminary hearing, but Mr. McGuire called Mr. Smith as his first witness at the preliminary hearing.

65. Mr. Smith testified that Mr. McGuire lived in the home with him and was there on July 25, 2023, when law enforcement arrived at their home. *Id.*, 21:9–22.

66. The State asked Mr. Smith why he lied to a law enforcement officer about Mr. McGuire not living there. *Id.*, 22:3–9.

67. Mr. Smith stated: "[B]ecause of the way they banged on my door like they was going to kick it in, and they really scared me." *Id.*

68. Mr. McGuire called a neighbor who lived across the street as his next witness to testify about what she saw when the officers approached Mr. McGuire's home. *Id.*, 22:16–17.

69. The neighbor testified that she had seen Mr. McGuire come out of the home across the street to walk his dog over the past year. *Id.*, 24:1–10.

70. She also testified that she is not a friend or associate of Mr. McGuire and does not communicate with him frequently. *Id.*, 24:15–25:1.

71. The Montgomery County, Alabama, district court judge presiding over the preliminary hearing found that no probable cause existed for the July 27, 2023 warrant and the August 4, 2023 arrest of Mr. McGuire and dismissed the charges against him. Exhibit 10.

**Defendant Richardsons' Supervisor and the City of Montgomery, Alabama**

72. Defendant Heather Williams supervised Defendant Richardson in carrying out the home check of Mr. McGuire's residence; obtaining the July 27 warrant for Mr. McGuire's arrest; and initiating the prosecution of Mr. McGuire for allegedly violating provisions of ASORCNA.

73. Defendant Williams was present at Mr. McGuire's August 25, 2023 preliminary hearing, serving in the capacity of Defendant Richardson's supervisor.

## CLAIMS FOR RELIEF

### Count 1
### Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)
### Malicious Prosecution
### The July 27, 2023 Warrant
### (Against Defendant Richardson)

74. Plaintiff realleges the facts and allegations set forth in paragraphs 1-71 and further alleges as follows.

75. Defendant Richardson, acting individually and with malice and knowing that probable cause did not exist, supplied false and misleading information to a state magistrate, which caused a warrant to be issued leading to Plaintiff's arrest and prosecution.

76. Defendant Richardson violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution by seeking a warrant based on facts which did not amount to probable cause.

77. Defendant Richardson violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution by falsifying information in the Complaint he submitted in support of the June 27, 2023 warrant.

78. No facts and circumstances within Defendant Richardson's knowledge would have caused a prudent officer to believe that Mr. McGuire had violated the law.

79. Defendant Richardson performed the unlawful acts described herein under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

80. Plaintiff is innocent of the charge in the June 27, 2023 Warrant.

81. On August 25, 2023, the prosecution based on the June 27, 2023 warrant terminated in Plaintiff's favor when the district court dismissed the charge.

82. As a direct and proximate result of Defendant Richardson's actions, Plaintiff was wrongfully arrested and jailed; wrongfully prosecuted; suffered extreme emotional and mental distress; was required to pay over $410.00 to a bonding company to secure his release; and spent more than $3,000 to obtain and move into a new residence.

### Count 2
### Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)
### Supervisory Liability
### The July 27, 2023 Warrant
### (Against Defendant Williams)

83. Plaintiff realleges the facts and allegations set forth in paragraphs 1-73 and further alleges as follows:

84. At all relevant times, Defendant Williams knew that MPD officers, including Defendant Richardson, had a practice of obtaining warrants for ASORCNA violations based on home compliance checks that could not provide probable cause that an individual had violated ASORCNA.

85. Despite this knowledge, Defendant Williams failed to adequately train, supervise, or discipline Defendant Richardson.

86. Defendant Williams violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution by failing to adequately train, supervise, or discipline Defendant Richardson.

87. Because Defendant Williams failed to train, supervise, or discipline Defendant Richardson, Defendant Richardson sought and obtained the July 27, 2023 warrant, which was not based on probable cause.

88. Because Defendant Williams failed to train, supervise, or discipline Defendant Richardson, Defendant Richardson falsified information in the July 27, 2023 warrant.

89. Defendant Williams performed the unlawful acts described herein under color of state law, intentionally, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

90. Plaintiff is innocent of the charge in the July 27, 2023 warrant.

91. On August 25, 2023, the prosecution based on the July 27, 2023 warrant terminated in Plaintiff's favor when the district court dismissed the charge.

92. As a direct and proximate result of Defendant Williams's actions, Plaintiff was wrongfully arrested and prosecuted; arrested and jailed; suffered extreme emotional and mental distress; was required to pay over $410.00 to a bonding company to secure his release; and spent more than $3,000 to obtain and move into a new residence.

**Count 3**
**Municipal Liability  (42 U.S.C. § 1983)**
**(Against the City of Montgomery, Alabama Police Department**
**and the City of Montgomery, Alabama)**

93. Plaintiff realleges the facts and allegations set forth in paragraphs 1-73 and further alleges as follows:

94. Defendant Richardson violated Plaintiff's constitutional rights under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

95. Defendant Richardson's violation of Plaintiff's constitutional rights was caused, in part, by the unconstitutional and deliberately indifferent customs and practices of the City of Montgomery and Montgomery Police Department as set forth above. These § 1983 claims against the City of Montgomery are not brought pursuant to the doctrine of respondeat superior, but pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and its progeny, because the City of Montgomery's policies, customs, and practices constituted a deliberate indifference to the constitutional rights of Plaintiff that was the moving force behind Defendant Richardson's unconstitutional and unlawful actions.

96. The City of Montgomery's policymakers, the Montgomery Police Department's policymakers, and Defendant Richardson's supervisors subjectively knew that their customs and practices (a) in failing to train officers about obtaining warrants for violations of ASORCNA based on information gathered during "home-compliance checks" and (b) in failing to discipline and/or educate officers who had previously obtained unconstitutional and unlawful warrants for violations of ASORCNA based on information gathered during "home-compliance checks" would result in more instances of officers obtaining unconstitutional and unlawful warrants for violations of ASORCNA based on information gathered during "home-compliance" checks.

97. The City of Montgomery's policymakers, the Montgomery Police Department's policymakers, and Defendant Richardson's supervisors were not only aware

15

of facts from which these conclusions could be drawn, they each subjectively drew such conclusions. They disregarded the risk to ASORCNA registrants, and in so doing they acted with more than gross negligence.

98. The City of Montgomery's and Montgomery Police Department's unconstitutional policies and customs were the driving force behind Defendant Richardson's violation of Plaintiff's constitutional rights. As a direct and proximate result of these unconstitutional policies and customs, Plaintiff was wrongfully arrested and prosecuted; arrested and jailed; suffered extreme emotional and mental distress; was required to pay over $410.00 to a bonding company to secure his release; and spent more than $3,000 to obtain and move into a new residence.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment jointly and severally against the defendants as follows:

   a. That the Court find in favor of the Plaintiff on all counts as presented herein.

   b. That the Court award compensatory damages to him and against the defendants, in an amount to be determined at trial;

   c. That the Court award punitive damages to him, and against all individual defendants, in an amount to be determined at trial, that will deter such conduct by the defendants in the future;

   d. For a damages trial by jury;

e. For recovery of his costs, including reasonable attorney's fees pursuant to 42 U.S.C § 1988; and,

f. For any and all other relief to which he may be entitled.

Respectfully submitted this 22nd day of August 2025.

*/s/ Joseph Mitchell McGuire*
Joseph Mitchell McGuire (MCG044)
*McGuire & Associates, LLC*
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000 (voice)
334-517-1327 (fax)
jmcguire@mandabusinesslaw.com
*Attorney for Plaintiff*